(738 P.2d 466)

No. 58,803

WESTERN MOTOR COMPANY, INC., *Plaintiff/Appellant*, v. PERRY V. KOEHN, *Defendant/Appellee*, v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, *Third-Party Defendant/Appellant*.

Opinion filed June 18, 1987.

*William Tinker* and *Quentin E. Kurtz*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, and *J. Taylor Neuschwander*, of Garden City, for the appellants.

*James M. Armstrong* and *Roberta R. Johnson*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellee.

Before ABBOTT, C.J., PARKS and MEYER, JJ.

PARKS, J.: This suit was filed by a car dealership, Western Motor Company, Inc., against defendant Perry Koehn after he returned a car from a test-drive in a damaged condition. Defendant filed a third-party petition against plaintiff's insurer, Universal Underwriters Insurance Company, alleging that plaintiff had been fully compensated for its loss and that Universal was the real party in interest. Koehn contended that Universal should be barred from asserting a claim for subrogation against him because defendant was an additional insured protected by Universal's coverage. The case was submitted to the court on stipulated facts and the court held the suit was barred because defendant was an insured. Western Motor and Universal appeal from the judgment in favor of Koehn.

The parties stipulated that on April 23, 1983, Koehn went to Western Motor and arranged to test-drive a new 1983 Buick Riviera. Prior to Koehn's test-drive, the Buick was undamaged and Koehn agreed to return it in an undamaged condition. However, while driving the Buick, Koehn was involved in an accident for which he was at fault. The car was damaged in the

accident but there is no indication in the record that any bodily injury or property damage resulted from the accident. Pursuant to its policy with Western Motor, Universal paid Western Motor $2,176.44 for damages to the covered vehicle. The parties did not stipulate to the total amount of damages sustained by the car but Western Motor's petition alleged damages in excess of that paid by Universal.

On May 1, 1984, Western Motor filed this action in Finney County seeking judgment against Koehn in the amount of $2,975.00 for damages to the Buick. Koehn's automobile liability insurance carrier, State Farm Mutual Automobile Insurance Company, denied coverage for the accident but defended Koehn under a reservation of rights. Koehn filed an answer and third-party petition which named Universal as a third-party defendant. Koehn claimed Universal's policy provided coverage for any liability he may have to Western Motor. He reasoned that if he was found liable to Western Motor, then Universal was in turn liable to him. Koehn contended that because Universal had paid Western Motor for the damage to the Buick, Universal was the real party in interest and that the action filed by Western Motor, in practical effect, resulted in Universal suing its own insured.

After considering the stipulated facts and arguments of the parties, the court issued a letter opinion which concluded that Koehn was an insured under Universal's policy. The court stated that no subrogation claim could be asserted by Universal and that Western Motor was only entitled to receive from defendant the amount of its loss which was not covered by insurance. However, the journal entry of judgment granted judgment to Koehn on the claims of both Western Motor and Universal. The plaintiff and its insurer appeal.

Turning first to consider the appeal of Western Motor, we note the apparent discrepancy between the court's opinion in its letter that Western Motor was limited in the recovery it could have against defendant and the judgment which denied any relief to plaintiff. However, since this case was submitted to the district court on stipulated facts and documentary evidence, we have the same opportunity to consider the evidence as did the district court and may determine what the facts establish de novo. *H. Freeman & Son v. Henry's, Inc.*, 239 Kan. 161, 162, 717

P.2d 1049 (1986). Therefore, any inconsistency between the court's letter opinion and the journal entry of judgment may be rectified on appeal without the necessity of remand.

In joining Universal in this action, defendant contended that the insurer, not Western Motor, was the real party in interest. However, an insured property owner, who has been but partly reimbursed for his loss, is the proper party to bring suit against a third-party wrongdoer for the entire loss. In case of recovery, the insured is said to hold in trust for his insurer the part of the proceeds which has been paid him on his loss. *Dondlinger & Sons' Constr. Co. v. EMCCO, Inc.*, 227 Kan. 301, 306, 606 P.2d 1026 (1980). Although the parties did not stipulate to the total loss sustained as a result of the car accident, plaintiff alleged the damages exceeded the sum paid by Universal, since it alleged damages of $2,975 and Universal paid only $2,176.44. In addition, the declarations in Universal's policy limit coverage to 100% of labor costs and 75% of parts with a $250 deductible. Therefore, the record indicates Western Motor was only partially reimbursed for its loss and was a real party in interest.

The cause of action alleged by Western Motor was the negligent execution of a bailment. A bailment is the delivery of personal property by one person to another for a specific purpose, with an express or implied contract that when the purpose has been fulfilled the property will be returned or accounted for. *M. Bruenger & Co. v. Dodge City Truck Stop, Inc.*, 234 Kan. 682, Syl. ¶ 1, 675 P.2d 864 (1984). The bailee in a bailment for mutual benefit must use ordinary care in safeguarding the property in order to prevent its damage or theft. *M. Bruenger & Co.*, 234 Kan. 682, Syl. ¶ 3. The parties' stipulated facts admitted the creation of a bailment for mutual benefit with acknowledgment of an agreement that defendant could test drive the car and would return it undamaged. Defendant also stipulated that he was at fault for the accident which resulted in the damages to the new Buick. Thus, defendant admitted the negligent execution of the bailment; Western Motor should have been granted judgment for the amount of its uninsured loss without regard to whether Western Motor or Universal could also recover the sum paid by Universal. The court erred in entering judgment without deter-

mining whether Western Motor did in fact sustain damage beyond that compensated by Universal.

We turn now to determine whether the court correctly denied recovery of the damages compensated by Universal. Once Universal was joined as a party, it sought recovery of the amount it had paid Western Motor based on its right of subrogation. This right is derived from its contract with the insured and its rights against a third-party wrongdoer can rise no higher than the rights of the insured against that third party. *Farmers Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 227 Kan. 533, 539, 608 P.2d 923 (1980); *Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 226 Kan. 197, 206-07, 597 P.2d 622 (1979). By definition, an insurer can have no right of subrogation against its own insured since its insured is not a third party but one to whom a duty to pay a loss is owed. In addition, it is generally stated that no right of subrogation arises against a person who is not a named insured but holds the status of an additional insured under the policy since it must have been the intention of the parties to protect this additional insured from the consequences of his negligence by including him in the insurance coverage. *Transamerica Ins. Co. v. Gage Plumbing and Heating Co.*, 433 F.2d 1051 (10th Cir. 1970) (applying Kansas law); 16 Couch on Insurance 2d § 61:137, p. 197 (rev. ed. 1983). Therefore, to determine whether an insurer is barred from claiming a right to subrogation from a particular person, the insurance contract must be examined to determine whether it was the intention of the parties to include the person within the scope of the policy's coverage.

The exhibit which the parties stipulated represented the insurance coverage provided by Universal is a single document consisting of multiple types of coverage. According to the first page of the exhibit, the policy insures "only those coverages and property shown in the declarations" made a part of the policy. In addition, the preamble to the policy states that each Coverage Part is a separate contract of insurance. Since Universal's right to subrogation arises out of the contract upon which it paid the loss caused by defendant, we must examine the applicable coverage part to determine whether the parties intended to insulate persons like defendant from the consequences of their own negligence.

Defendant points to the definitions in Coverage Part 900,

Basic Auto Insurance, to argue that he is included in the scope of the intended coverage. However, the declarations indicate that the only portion of the coverage in Coverage Part 900 which was included in the insurance purchased by Western Motor was that provided by Insuring Agreement "A" which protects against bodily injury. The loss sustained by Western Motor and reimbursed in part by Universal was confined to damage to a car owned by plaintiff. This loss would be insured under the protection described in Coverage Part 300, "Auto Physical Damage." This coverage part provides insurance against any loss of or to a covered auto from any cause except as excluded. The coverage applies to new cars, such as the Buick damaged in this case, and covers any number of risks including fire, flood, theft, and collision. Coverage Part 300 includes a definition section but it does not define "Insured" or include a "Who is an Insured" provision. By contrast, the contract protecting against physical damage to covered vehicles does include the following exclusion:

"NO BENEFIT TO BAILEE—This insurance will not benefit, directly or indirectly, any carrier or bailee."

Looking solely at the language of Coverage Part 300, there is no reason to conclude the insurer and insured intended individuals in defendant's position to receive the protection of the insurance. The coverage protects specific covered property rather than applying to the action of a particular individual who could be characterized as an "insured." In addition, the applicable contract of insurance expressly provides that persons in defendant's position as a bailee are not intended to benefit from the coverage. Since the policy states that each coverage part is intended to be a separate contract, the inclusion of definitions of "insured" in other coverage parts which could include defendant do not contradict the intention expressed in Coverage Part 300 that bailees not benefit from the physical damage protection.

Our interpretation of the specific wording of Universal's policy is also consistent with the general authority from other jurisdictions. 10A Couch on Insurance 2d § 42:223 (rev. ed. 1982). Although each case depends heavily on the particular contract language involved, those involving loss to insured property

under collision coverage, as opposed to liability, have generally held the insurer could assert subrogation rights against a third-party tortfeasor. These cases tend to either construe the policy definition of "insured" as not including or excluding the tortfeasor (see, *e.g., Auto Driveaway Company v. Aetna Cas. & Sur. Co.,* 19 Ariz. App. 224, 506 P.2d 264 [1973]; *Dairyland Ins. Co. v. Munson,* 292 Minn. 141, 193 N.W.2d 476 [1972]), or they examine the type of coverage involved and determine it does not protect the interests of anyone but the owner of the insured property. See *e.g., Highlands Ins. Co. v. Fischer,* 122 Ariz. 394, 595 P.2d 186 (Ct. App. 1979); *Aetna Cas. and Surety Co. v. Penn. Nat. Mut. Cas. Ins. Co.,* 316 N.C. 368, 341 S.E.2d 548 (1986).

In a recent case, an individual named Bell borrowed and wrecked a car owned by a car agency, Imports of High Point, Inc. The North Carolina Supreme Court held the insurer (Penn) could maintain a subrogation action against Bell regardless of whether he could be called an "insured." The court stated, in part, as follows:

"The issues of who is an 'insured' and of permissive use are critical in the resolution of a dispute involving automobile *liability* insurance policies but not in cases involving automobile collision coverage; liability insurance covers whomever may be construed as an 'insured' under the terms of the policy and permission is relevant in determining whether the acts of the driver are insured by the policy. Collision insurance is basically a contract of indemnity which merely covers physical damage to a specific insured vehicle—here, the Mercedes itself—irrespective of who is driving. 10A Couch on Insurance 2d § 42:221 (rev. ed. 1983); 7 Am. Jur. 2d *Automobile Insurance* §§ 157, 172 (1980); Annot., *Automobile Insurance—Accident—Collisions,* 105 A.L.R. 1426, 1431 (1936). In fact, Penn does not dispute its obligation to pay Imports regardless of who was operating the vehicle or even that it would have to pay Imports for damage to the Mercedes if it had been standing still. The question we must decide, then, boils down to whether Imports has a valid cause of action against Bell and, if so, whether Penn has the right to be subrogated to that cause of action.

"Our resolution of the issue in this case is premised on the type of insurance policy concerned and is founded on general principles of subrogation. Since the coverage in controversy was for damage from collision, only the owner, Imports, had an insurable interest in the car. Imports of High Point, Inc.—the corporation itself—was indemnified by Penn pursuant to Penn's obligation under the collision coverage clause for the property damage to the Mercedes. Because Bell does not hold legal title to the Mercedes and has no equitable or economic interest in the car, he has no insurable interest with respect to collision coverage. Thus, plaintiffs' argument that permissive use exempts Bell from liability for compen-

sation to Penn for the damage to the car is not relevant to the controversy arising on the facts before us. Imports could sue Bell for negligently damaging the Mercedes. . . . Because there is no impediment to Imports suing Bell as the tort-feasor legally responsible for the damage to its Mercedes, we hold that Penn has the right to be subrogated to Imports' right of action against Bell. The decision of the Court of Appeals is therefore

Reversed." *Aetna Cas. and Surety Co.*, 316 N.C. at 370-72.

Defendant also argues that even if the particular provisions of Universal's insurance contract do not protect him, public policy expressed in the automobile injury reparations act (K.S.A. 40-3102 *et seq.*) compels the extension of such protection. He contends that to permit Universal to assert its right of subrogation against him would violate the law which requires automobile insurance to protect any person who has express or implied consent to use the vehicle of the named insured. K.S.A. 40-3107(b). However, while our law requires *liability* insurance policies to contain provisions which include the permissive user as an insured, Universal's subrogation right in this case arose out of its payment to the policy holder under its collision coverage. As already noted, this coverage applies regardless of who was driving the car or whether it was being driven at all. K.S.A. 40-3107 is intended to assure the compensation of accidental bodily injuries and specifically provides that an insurer may exclude coverage for any damages to property owned by the insured. K.S.A. 40-3107(i)(2). Therefore, the statutory mandate contained in K.S.A. 40-3107 simply has no bearing on this case. See *Highlands Ins. Co.*, 122 Ariz. at 396 (under statute omnibus coverage is an implied term in liability policies, not collision policies).

In conclusion, we hold that the district court erred in granting judgment to defendant against the claims of both Western Motor and Universal. The stipulated evidence established that Western Motor was entitled to recover the amount of any loss not reimbursed by insurance. Moreover, the terms of the insurance contract which gave rise to Universal's claim to subrogation reflects an intention by the insurer and insured that persons in defendant's position not be protected by the collision coverage.

Reversed.

ABBOTT, C.J., dissenting: I would affirm the trial court. The

dispositive issue before us is the liability portion of the insurance policy. The damage issue was not reached in the trial court and was not briefed on appeal. Thus, the damage issue is not before us.

I would hold that Koehn is an additional insured under the policy, thus precluding his own insurance carrier from subrogating against him. I regret that time constraints prevent me from going into greater detail.