No. 58,803

WESTERN MOTOR COMPANY, INC., *Plaintiff-Appellant*, v. PERRY V. KOEHN, *Defendant-Appellee*, v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, *Third-Party Defendant-Appellant.*

(748 P.2d 851)

Opinion filed January 15, 1988.

*Quentin E. Kurtz*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause, and *William Tinker*, of the same firm, and *J. Taylor Neuschwander*, of Garden City, were with him on the briefs for appellants.

*Stephen M. Kerwick*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *James M. Armstrong, Roberta R. Johnson*, and *Jerry G. Elliott*, of the same firm, were with him on the briefs for appellee.

The opinion of the court was delivered by

McFARLAND, J.: The primary issue in this action is the construction of an automobile dealership's insurance policy.

The facts may be summarized as follows. Western Motor Company, Inc., an automobile dealership situated in Garden City, permitted Perry Koehn to test drive a new Buick Riviera on April 23, 1983. Koehn agreed to return the vehicle in an undamaged condition. While driving the Buick, Koehn was involved in an accident in which he was at fault. There is no claim there was any bodily injury or property damage except to the Buick. Universal Underwriters Insurance Company was Western Motor's insurer. Universal paid Western Motor $2,176.44 for damages to the Buick.

On May 1, 1984, Western Motor filed this action against Koehn seeking a judgment for $2,975.00 for damages to the Buick. Koehn's automobile liability insurance carrier, State Farm Mutual Automobile Insurance Company, denied coverage for the accident but defended Koehn under a reservation of rights.

Koehn filed an answer and third-party petition which named Universal as a third-party defendant. Koehn claimed Universal's policy provided coverage for any liability he may have to Western Motor. He reasoned that if he were to be found liable to Western Motor, then Universal was, in turn, liable to him. Koehn contended that because Universal had paid Western Motor for the damage to the Buick, Universal was the real party in interest and that the action filed by Western Motor was in reality an action by Universal against its own insured.

After considering the stipulated facts and arguments of the parties, the district court issued a letter opinion which concluded that Koehn was an insured under Universal's policy. The court stated that no subrogation claim could be asserted by Universal and that Western Motor was entitled to receive from defendant only the amount of its loss which was not covered by insurance. However, the journal entry of judgment granted judgment to Koehn on the claims of both Western Motor and Universal. The plaintiff and its insurer appealed therefrom.

The Court of Appeals reversed the district court, holding that Universal could assert a subrogation claim against Koehn (12 Kan. App. 2d 215, 738 P.2d 466 [1987]). The matter is before us on Koehn's petition for review.

Before proceeding, it is appropriate to explain what transpired in the Court of Appeals relative to the issue of concern to Western Motor—that is, the discrepancy between the district court's letter decision and the journal entry of judgment relative to Western Motor's entitlement to damages over and above the sum paid by Universal. In disposing of this issue, the Court of Appeals stated:

"Turning first to consider the appeal of Western Motor, we note the apparent discrepancy between the court's opinion in its letter that Western Motor was limited in the recovery it could have against defendant and the judgment which denied any relief to plaintiff. However, since this case was submitted to the district court on stipulated facts and documentary evidence, we have the same opportunity to consider the evidence as did the district court and may determine what the facts establish de novo. *H. Freeman & Son v. Henry's, Inc.*, 239 Kan. 161, 162, 717 P.2d 1049 (1986). Therefore, any inconsistency between the court's letter opinion and the journal entry of judgment may be rectified on appeal without the necessity of remand.

"In joining Universal in this action, defendant contended that the insurer, not

Western Motor, was the real party in interest. However, an insured property owner, who has been but partly reimbursed for his loss, is the proper party to bring suit against a third-party wrongdoer for the entire loss. In case of recovery, the insured is said to hold in trust for his insurer the part of the proceeds which has been paid him on his loss. *Dondlinger & Sons' Constr. Co. v. EMCCO, Inc.,* 227 Kan. 301, 306, 606 P.2d 1026 (1980). Although the parties did not stipulate to the total loss sustained as a result of the car accident, plaintiff alleged the damages exceeded the sum paid by Universal, since it alleged damages of $2,975 and Universal paid only $2,176.44. In addition, the declarations in Universal's policy limit coverage to 100% of labor costs and 75% of parts with a $250 deductible. Therefore, the record indicates Western Motor was only partially reimbursed for its loss and was a real party in interest.

"The cause of action alleged by Western Motor was the negligent execution of a bailment. A bailment is the delivery of personal property by one person to another for a specific purpose, with an express or implied contract that when the purpose has been fulfilled the property will be returned or accounted for. *M. Bruenger & Co. v. Dodge City Truck Stop, Inc.,* 234 Kan. 682, Syl. ¶ 1, 675 P.2d 864 (1984). The bailee in a bailment for mutual benefit must use ordinary care in safeguarding the property in order to prevent its damage or theft. *M. Bruenger & Co.,* 234 Kan. 682, Syl. ¶ 3. The parties' stipulated facts admitted the creation of a bailment for mutual benefit with acknowledgment of an agreement that defendant could test drive the car and would return it undamaged. Defendant also stipulated that he was at fault for the accident which resulted in the damages to the new Buick. Thus, defendant admitted the negligent execution of the bailment; Western Motor should have been granted judgment for the amount of its uninsured loss without regard to whether Western Motor or Universal could also recover the sum paid by Universal. The court erred in entering judgment without determining whether Western Motor did in fact sustain damage beyond that compensated by Universal." 12 Kan. App. 2d at 216-18.

Although the Court of Appeals' opinion reversed the district court on this issue, it did not specifically order the case remanded for the determination of what damage, if any, Western Motor suffered over and above compensation received from Universal. A remand would be necessary, obviously, to carry out the Court of Appeals' decision. Review was not sought on this aspect of the Court of Appeals' opinion, however, so we conclude that a remand for this determination is inherent in the Court of Appeals' opinion.

We turn now to the issue before us. Did the district court err in denying recovery of that portion of Western Motor's claim which represented Universal's subrogated claim for damages paid under its policy, and in holding that Universal is barred from any recovery against Koehn? We believe, as did the Court of Appeals, that the district court did err in so holding.

An insurer's right of subrogation is derived from the insurance contract. *Farmers Ins. Co. v. Farm Bureau Mut. Ins.* Co., 227 Kan. 533, 608 P.2d 923 (1980). An insurer claiming the right of subrogation stands in the shoes of its insured, and any defenses against the insured are likewise good against the insurer. *Shelman v. Western Casualty & Surety Co.*, 1 Kan. App. 2d 44, Syl. ¶ 5, 562 P.2d 453, *rev. denied* 221 Kan. 757 (1977). By definition, an insurer can have no right of subrogation against its own insured since its insured is not a third party but one to whom a duty to pay a loss is owed. In addition, it is generally stated that no right of subrogation arises against a person who is not a named insured but holds the status of an additional insured under the policy since it must have been the intention of the parties to protect this additional insured from the consequences of his negligence by including him in the insurance coverage. *Transamerica Ins. Co. v. Gage Plumbing and Heating Co.*, 433 F.2d 1051 (10th Cir. 1970) (applying Kansas law); 16 Couch on Insurance 2d § 61:137 (rev. ed. 1983). Therefore, to determine whether an insurer is barred from claiming a right of subrogation against a particular person, the insurance contract must be examined to determine whether it was the intention of the parties to include the person within the scope of the policy's coverage.

The exhibit, which the parties stipulated represented the insurance coverage provided by Universal, is a single document consisting of multiple types of coverage. According to the first page of the exhibit, the policy insures "only those coverages and property shown in the declarations" made a part of the policy. In addition, the preamble to the policy states that each coverage part is a separate contract of insurance. Since Universal's right of subrogation arises out of the contract upon which it paid the loss caused by defendant, we must examine the three coverage parts claimed to be applicable to determine whether the parties intended to insulate persons like defendant from the consequences of their own negligence.

We shall first consider Coverage Part 900, designated as "Basic Auto Insurance." Coverage under Part 900 includes coverage under insuring agreements A, B, and C contained therein. Insuring agreement B pertains only to medical payments and is

obviously inapplicable herein. Under Coverage Part 900 an insured is described as the named insureds and "(b) any other person using an OWNED AUTO or TEMPORARY SUBSTI-TUTE AUTO within the scope of YOUR permission . . . ." (Emphasis in original.) At first blush, this would result in making Koehn an insured under insuring agreement A which provides:

"A. INJURY - all sums the INSURED legally must pay as damages (including punitive damages where insurable by law) because of INJURY to which this insurance applies, caused by an OCCURRENCE arising out of the ownership, maintenance, use, loading or unloading of an OWNED AUTO or TEMPORARY SUBSTITUTE AUTO."

However, under exclusion (e) insuring agreement A does not apply to "INJURY to property owned by . . . or in the care, custody or control of the INSURED." Finally, coverage 900 contains this provision:

"NO BENEFIT TO BAILEE - This insurance will not benefit, directly or indirectly, any carrier or bailee."

We believe the clear import of the provision applicable to insuring agreement A under Part 900 was that coverage was not intended for the benefit of bailees damaging vehicles owned by Western Motor.

Part C of 900 applies to:

"C. PHYSICAL DAMAGE - for LOSS to an OWNED AUTO from any cause, except as excluded or as stated otherwise in the declarations."

Clearly, Koehn did not own the damaged Buick and there is no definition of insured applicable to this coverage which would make Koehn any additional insured. Also the "no benefit to bailee" clause applies to part C, as well as part A.

We turn now to Coverage Part 500 designated as Garage Insurance. This coverage includes product liability damages and assorted torts which might be committed by Western Motor's employees, etc. The only portion that might apply to the facts herein is the "auto hazard" coverage which extends coverage to "Any other person . . . required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission." "AUTO HAZARD" is defined as the use of any auto Western owns "furnished for the use of any person . . . ."

Under "EXCLUSIONS," however, the contract states, "This insurance does not apply to: . . . (i) INJURY to: (1) personal property, including AUTOS . . . in the care, custody or control of . . . the INSURED." Universal contends it thus protects Koehn under Western's liability insurance, as required by K.S.A. 40-3107(b), but excludes damage to property owned by or in the charge of the insured as permitted by K.S.A. 40-3107(i)(2). This interpretation appears sound. Kansas law does not require the owner of a vehicle to insure against damage to that vehicle. It would be rather inconsistent to hold that the owner of the vehicle must provide insurance against damage to the vehicle if it is damaged while being operated by a permissive user when no such coverage is required when the insured vehicle is being driven by a named insured. This aspect is discussed in greater depth later in the opinion in reference to Koehn's "public policy" argument.

This brings us to Coverage Part 300 designated as "Auto Physical Damage," which provides insurance against any loss of or to a covered auto from any cause except as excluded. The coverage applies to new cars, such as the Buick damaged in this case, and covers any number of risks including fire, flood, theft, and collision. Coverage Part 300 includes a definition section but it does not define "Insured" or include a "Who is an Insured" provision. Payment for damage to a covered vehicle goes to the insured owner of the vehicle—Western Motor. The following exclusion is contained therein:

"NO BENEFIT TO BAILEE - This insurance will not benefit, directly or indirectly, any carrier or bailee."

As the Court of Appeals stated in its decision in the cases herein:

"Looking solely at the language of Coverage Part 300, there is no reason to conclude the insurer and insured intended individuals in defendant's position to receive the protection of the insurance. The coverage protects specific covered property rather than applying to the action of a particular individual who could be characterized as an 'insured.' In addition, the applicable contract of insurance expressly provides that persons in defendant's position as a bailee are not intended to benefit from the coverage. Since the policy states that each coverage part is intended to be a separate contract, the inclusion of definitions of 'insured' in other coverage parts which could include defendant do not contradict the intention expressed in Coverage Part 300 that bailees not benefit from the physical damage protection.

"Our interpretation of the specific wording of Universal's policy is also consistent with the general authority from other jurisdictions. 10A Couch on Insurance 2d § 42:223 (rev. ed. 1982). Although each case depends heavily on the particular contract language involved, those involving loss to insured property under collision coverage, as opposed to liability, have generally held the insurer could assert subrogation rights against a third-party tortfeasor. These cases tend to either construe the policy definition of 'insured' as not including or excluding the tortfeasor (see, *e.g., Auto Driveaway Company v. Aetna Cas. & Sur. Co.*, 19 Ariz. App. 224, 506 P.2d 264 [1973]; *Dairyland Ins. Co. v. Munson*, 292 Minn. 141, 193 N.W.2d 476 [1972]), or they examine the type of coverage involved and determine it does not protect the interests of anyone but the owner of the insured property. See, *e.g., Highlands Ins. Co. v. Fischer*, 122 Ariz. 394, 595 P.2d 186 (Ct. App. 1979) . . . ." 12 Kan. App. 2d at 219-20.

In *Aetna Cas. and Surety Co. v. Penn. Nat. Mut. Cas. Ins. Co.*, 316 N.C. 368, 341 S.E.2d 548 (N.C. 1986), an individual named Bell borrowed and wrecked an automobile owned by a car agency, Imports of High Point, Inc. In a subrogation action arising therefrom, the North Carolina Supreme Court held:

"The issues of who is an 'insured' and of permissive use are critical in the resolution of a dispute involving automobile *liability* insurance policies but not in cases involving automobile collision coverage; liability insurance covers whomever may be construed as an 'insured' under the terms of the policy and permission is relevant in determining whether the acts of the driver are insured by the policy. Collision insurance is basically a contract of indemnity which merely covers physical damage to a specific insured vehicle—here, the Mercedes itself—irrespective of who is driving. 10A Couch on Insurance 2d § 42:221 (rev. ed. 1983); 7 Am. Jur. 2d *Automobile Insurance* §§ 157, 172 (1980); Annot., *Automobile Insurance—Accident—Collisions*, 105 A.L.R. 1426, 1431 (1936). In fact, Penn does not dispute its obligation to pay Imports regardless of who was operating the vehicle or even that it would have to pay Imports for damage to the Mercedes if it had been standing still. The question we must decide, then, boils down to whether Imports has a valid cause of action against Bell and, if so, whether Penn has the right to be subrogated to that cause of action.

"Our resolution of the issue in this case is premised on the type of insurance policy concerned and is founded on general principles of subrogation. Since the coverage in controversy was for damage from collision, only the owner, Imports, had an insurable interest in the car. Imports of High Point, Inc.—the corporation itself—was indemnified by Penn pursuant to Penn's obligation under the collision coverage clause for the property damage to the Mercedes. Because Bell does not hold legal title to the Mercedes and has no equitable or economic interest in the car, he has no insurable interest with respect to collision coverage. Thus, plaintiffs' argument that permissive use exempts Bell from liability for compensation to Penn for the damage to the car is not relevant to the controversy arising on the facts before us. Imports could sue Bell for negligently damaging the

Mercedes. . . . Because there is no impediment to Imports suing Bell as the tortfeasor legally responsible for the damage to its Mercedes, we hold that Penn has the right to be subrogated to Imports' right of action against Bell. The decision of the Court of Appeals is therefore Reversed." 316 N.C. at 370-72.

Koehn also raises a "public policy" argument which was adequately discussed and disposed of in the Court of Appeals' opinion as follows:

"Defendant also argues that even if the particular provisions of Universal's insurance contract do not protect him, public policy expressed in the automobile injury reparations act (K.S.A. 40-3102 *et seq.*) compels the extension of such protection. He contends that to permit Universal to assert its right of subrogation against him would violate the law which requires automobile insurance to protect any person who has express or implied consent to use the vehicle of the named insured. K.S.A. 40-3107(b). However, while our law requires *liability* insurance policies to contain provisions which include the permissive user as an insured, Universal's subrogation right in this case arose out of its payment to the policy holder under its collision coverage. As already noted, this coverage applies regardless of who was driving the car or whether it was being driven at all. K.S.A. 40-3107 is intended to assure the compensation of accidental bodily injuries and specifically provides that an insurer may exclude coverage for any damages to property owned by the insured. K.S.A. 40-3107(i)(2). Therefore, the statutory mandate contained in K.S.A. 40-3107 simply has no bearing on this case. See *Highlands Ins. Co.*, 122 Ariz. at 396 (under statute omnibus coverage is an implied term in liability policies, not collision policies)." 12 Kan. App. 2d at 221.

We conclude that Koehn was not an insured under the insurance contract and that the district court erred in concluding that Universal had no right of subrogation against Koehn for the money it paid Western Motor for the damage to the Buick automobile and was barred from seeking recovery for the same against Koehn.

The judgment of the Court of Appeals is affirmed. The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.