296 A.2d 15.

AMOS HAMRICK, *p.a.,* et al. *vs.* HOSPITAL SERVICE CORPORATION OF RHODE ISLAND.

OCTOBER 31, 1972.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

ROBERTS, C. J. This is an action for declaratory judgment brought pursuant to Super. R. Civ. P. 57, in which the plaintiffs seek to have the defendant's subrogation lien on proceeds of a settlement by the plaintiffs of a civil action against a third-party tort-feasor for personal injuries declared null and void. The plaintiffs moved for summary judgment, which motion was granted by the Superior Court. The defendant is now prosecuting an appeal therefrom to this court.

The facts are that in November of 1968, plaintiff, Miles Hamrick, an employee of the Union Paper Company, signed an application for himself and his family to participate in a plan for the payment of hospital expenses offered by defendant, Hospital Service Corporation of Rhode Island, hereinafter referred to as Blue Cross. By the terms of the Blue Cross contract, Miles Hamrick and every listed member of his family were entitled to payment for hospital expenses incurred by them, and Blue Cross was subrogated to any recovery by any of the aforesaid from a tort-feasor to the extent of payments made by Blue Cross.

Miles Hamrick's then seven-year-old son, Amos, was injured in an automobile accident in May, 1969, and incurred certain hospital expenses of which Blue Cross paid the sum of $3,087.20 to providers of hospital and medical services

at Miles Hamrick's request. To pursue any rights against the third-party tort-feasors, Miles Hamrick signed a retainer agreement with Thomas Pearlman, Esq., acting as the attorney for him and his infant son, Amos. Two months later, Mr. Pearlman agreed by letter to represent Blue Cross in enforcing its right to subrogation.

Subsequently, counsel filed on behalf of both Hamricks a complaint in Providence Superior Court, Civil Action No. 70-782, seeking total damages of $25,000. This action was settled before coming to trial. A judgment was entered for Amos Hamrick in the amount of $8,400, and his father's claim was dismissed with prejudice after he agreed to accept $572.20.

Pursuant to its subrogation clause with Miles Hamrick, Blue Cross then filed a lien on the award of $8,400 made to Amos Hamrick. This action for declaratory judgment pursuant to Super. R. Civ. P. 57 was commenced in Superior Court on May 14, 1970, seeking to have defendant's subrogation lien on the Hamricks' $8,972.20 total settlement declared null and void. The plaintiffs moved for summary judgment under Super. R. Civ. P. 56. The court granted the motion as to Amos Hamrick on February 25, 1971. An order was then entered on April 28, 1971, setting forth the court's findings of fact and conclusions of law and granting judgment to defendant on its counterclaim for the $572.20 recovered by Miles Hamrick.

We turn to consider, then, the question of whether the infant plaintiff here is bound under the subrogation clause of the Blue Cross contract. We hold that he was so bound, concluding that as a matter of equity and public policy a parent in the discharge of his duty to care for his child can bind that child, even though a minor, to a subrogation clause of a medical service contract.

Both plaintiffs and defendant in this court have placed great emphasis on the law governing the contracts of in-

fants. In our opinion, however, that body of doctrine is not germane to the resolution of this case. The undisputed fact is that the infant plaintiff never did contract with Blue Cross. The fundamental issue here is whether a parent who contracts to provide a medical insurance contract for his child can legally bind that child to a subrogation clause in the pertinent contract.

General Laws 1956 (1969 Reenactment) §33-15-1, imposes a duty on parents to provide for the "care, nurture, welfare and education" of their minor children. Today, the soaring cost of hospital services dictates medical insurance for all individuals. Consequently, it seems incumbent upon a parent, in order to provide for the care of his minor children, to have them covered by some medical insurance plan. This makes relevant, then, the question whether, in fulfilling his obligation to his child, a parent can bind a minor to a subrogation clause of the contract.

The Supreme Court of California was faced with an analogous problem in *Doyle* v. *Giuliucci*, 62 Cal.2d 606, 401 P.2d 1, 43 Cal. Rptr. 697 (1965). In that case, the plaintiff's father entered into a medical service contract with a group practice which provided care for himself and his dependents. The agreement also obligated the subscriber or a dependent to submit any claim against the group to arbitration. The plaintiff's father notified the defendants of a malpractice claim against them in connection with services to the plaintiff, an infant. The claim was submitted to arbitration, but prior to an award the plaintiff brought suit. The defendants obtained a stay pending the arbitration award. The arbitrators then denied the plaintiff's claim, whereupon the plaintiff petitioned the court to vacate the award. The court confirmed the award, and the plaintiff appealed.

The plaintiff asserted that as an infant she could dis-

affirm the contract. Justice Traynor, writing for the court, disagreed. He wrote:

> "The crucial question therefore is whether the power to enter into a contract for medical care that binds the child to arbitrate any dispute arising thereunder is implicit in a parent's right and duty to provide for the care of his child * * *. There are compelling reasons for recognizing that power. Since minors can usually disaffirm their own contracts to pay for medical services * * * it is unlikely that medical groups would contract directly with them. They can be assured the benefits of group medical service only if parents can contract on their behalf. Unless such contracts unreasonably restrict minors' rights, they should be sustained." *Id.* at 610, 401 P.2d at 3, 43 Cal.Rptr. at 699.

The court then concluded that an arbitration provision is a reasonable restriction in a medical service contract.

The logic of Justice Traynor applies to the case at hand. The availability of medical insurance for minors depends on whether parents contract to so protect their children. If a subrogation clause is a reasonable provision for such contracts, then the parent should be able to bind the child to it in order to meet his duty of care. *Hospital Service Corp. v. Pennsylvania Ins. Co.*, 101 R. I. 708, 227 A.2d 105 (1967), held the Blue Cross subrogation clause to be valid. In that opinion at 715, 227 A.2d at 110, the court approved the subrogation provision as tending to reduce subscription rates and avoiding "* * * a windfall for those few who may be greedy or overreaching."

If a subrogation clause is a valid and reasonable provision in a medical service contract for adults, there appears to be no compelling reason why it should not be binding on children. Minors are allowed to disaffirm their own contracts because society has a paramount concern to protect a child from his own improvidence even if such protection results in hardship or economic loss to another. *McGuckian v. Carpenter*, 43 R. I. 94, 110 A. 402 (1920); *Rotondo* v.

*Kay Jewelry Co.*, 84 R. I. 292, 123 A.2d 404 (1956). However, enforcement of the subrogation provision does no harm to a minor; it simply prevents him from recovering a windfall.

Although the posture of this case is not that of a minor's contract, certain equitable principles of the law of infant contracts pertain to the case. "[W]ith respect to contracts infancy is said to act as a shield and not as a sword, and the privilege of disaffirmance should serve as a shield and not as an instrument of oppression." 43 C.J.S. *Infants* §75(a) (1945). Thus, the general rule requires a child who disaffirms a contract to return the consideration received if he can. *McGuckian* v. *Carpenter, supra* at 96, 110 A. at 403; *Rotondo* v. *Kay Jewelry Co., supra* at 294, 123 A.2d at 405; 43 C.J.S. *Infants* §75(e) (1945).

A child who obtained medical treatment under a Blue Cross contract cannot return the services he received, but if he has recovered the value of those services from a tortfeasor, he should be compelled to return that money upon disaffirmance of the contract. Another equitable principle is that a minor cannot take the benefits of a contract while disaffirming the burdens. *Peers* v. *McLoughlin,* 88 Cal. 294, 26 P. 119 (1891); *Schmidt* v. *Horton,* 52 Nev. 302, 287 P. 274 (1930). Thus, a child should not be allowed to receive the medical benefits of a contract and disaffirm the subrogation clause.

In conclusion, to allow a minor who recovers from a tort-feasor for medical expenses paid under a medical insurance contract to keep those proceeds despite a subrogation clause requiring their return to the insurer simply because the parent and not the child entered into the contract, defies equity. The child, though not a subscriber to the contract, is a beneficiary of it and, though perhaps not legally responsible for his own care, is the recipient of the medical services. Therefore, it seems reasonable and fair

640

to bind him on a subrogation clause executed by his parent. Otherwise, he would receive a windfall, and society might possibly face a higher rate structure.

Having concluded that the infant plaintiff was bound by the subrogation clause of the contract of insurance, it is clear that the trial court, in finding that the infant plaintiff was not so bound, was in error. One of the antecedent conditions to the ordering of summary judgment is that the moving party be entitled to judgment as a matter of law. Where the adverse party fails to sustain his burden of showing that a genuine issue of fact remains to be tried, summary judgment should be ordered unless it appears "* * * that the moving party is entitled to judgment as matter of law." *See Gallo* v. *National Nursing Homes, Inc.,* 106 R. I. 485, 261 A.2d 19 (1970). Obviously, the minor plaintiff here, being bound by the subrogation provisions of his father's contract, could not be entitled as a matter of law to the entry of judgment. In such circumstance the motion for summary judgment should have been denied.

It is to be noted that the trial court appears to have found that there remained a genuine issue of fact to be resolved when it concluded that the fund paid to the instant plaintiff in settlement of his claim against the tort-feasor "was not for medical bills, but only for injuries, pain and suffering." Obviously, the trial court found the existence of a question of fact and proceeded then and there to make a determination of that question on the affidavits. This was clearly error. *Slefkin* v. *Tarkomian,* 103 R. I. 495, 238 A.2d 742 (1968). In that case we held that under Super. R. Civ. P. 56(c), "* * * the pivot upon which the summary judgment procedure turns is issue finding, not issue determination." *Id.* at 498, 238 A.2d at 743. Here the trial justice, upon ascertaining that an issue of fact remained for solution, proceeded to make a determination thereof. This was error, for, once the existence of a genuine fact issue had

been established, the motion for summary judgment should have been denied.

The defendant's appeal is sustained, and the summary judgment appealed from is reversed.

Mr. Justice Joslin did not participate.

*Pearlman & Pearlman, Thomas W. Pearlman,* for plaintiffs.

*Tillinghast, Collins & Graham, Peter J. McGinn, Frank J. Williams,* for defendant.