581 So.2d 800 (1991)
Harold G. PECK and John O. Morrow, Jr., d/b/a Peck and Morrow, Attorneys at Law
v.
Danny B. DILL, as father and conservator of Mandy Dill, a minor.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA
v.
Danny B. DILL, as father and conservator of Mandy Dill, a minor.
89-86, 89-87.
Supreme Court of Alabama.
January 11, 1991.
Rehearing Denied April 5, 1991.
*801 John O. Morrow, Jr., Florence, for appellants Peck and Morrow.
J. Mark Hart and Pamela F. Colbert of Spain, Gillon, Grooms, Blan & Nettles, Birmingham, for appellant The Prudential Ins. Co. of America.
William M. Bouldin of Guin, Bouldin & Alexander, Russellville, for Danny B. Dill.
PER CURIAM.
These two consolidated appeals arise from an automobile accident that occurred on June 14, 1987. On that date 11-year-old Mandy Dill and her mother, Jacqueline Dill, were returning home to Alabama from a vacation in Florida. As Mandy and her mother were driving through Okaloosa County, Florida, they were involved in an automobile accident with an automobile driven by Talmadge Harrison. Harrison was insured by Alfa Insurance Company for up to $50,000 liability. State Farm Insurance Company insured Jacqueline, providing her and Mandy $20,000 in underinsured motorist coverage.
Mandy was severely injured in the automobile accident. Her injuries have required hospitalization on several occasions and a number of surgeries. Prior to this accident Jacqueline had been divorced from Mandy's father, appellee Danny B. Dill. At the time of the accident Jacqueline had custody of Mandy. Jacqueline had medical insurance coverage for herself and Mandy through a health plan established by her employer, Wickes Lumber Company. The Prudential Insurance Company of America ("Prudential") administered the Wickes health plan. After the accident, Danny obtained custody of Mandy. At that time Danny was insured under a health plan provided by his employer and administered by Employers Life Insurance Company. Since Danny obtained custody of Mandy, she has been hospitalized twice as a result of injuries sustained in the accident. Employers has paid all of those medical expenses.
On February 22, 1989, Danny filed a complaint styled "Petition for Instructions Under Section 26-2A-144, Code of 1975," seeking to have the court determine the subrogation rights of Employers Life and Prudential and to have the court approve a proposed pro ami settlement of Mandy's claims against Harrison and State Farm for the maximum insurance benefits of $70,000. The trial court appointed a guardian ad litem to represent Mandy's interests. The guardian ad litem filed a motion before the trial court on behalf of Mandy, disaffirming an employment contract that Jacqueline and Danny had entered with Peck and Morrow, attorneys at law, and disaffirming the subrogation agreements with Prudential and Employers Life.

ATTORNEY FEES
Case 89-86 involves the issue of attorney fees. Shortly after the automobile accident on June 14, 1987, Jacqueline contracted *802 with the law firm of Peck and Morrow for legal representation regarding the accident. Jacqueline entered into the contract on her own behalf and on Mandy's behalf. After he gained custody of Mandy, Danny also signed the employment contract with Peck and Morrow. Under the terms of the employment contract, Peck and Morrow was to receive 25% of any settlement recovery in the case. As a result of Peck and Morrow's efforts, a settlement agreement between Alfa, State Farm, and Mandy was reached in the amount of $70,000.
The trial court held a valid pro ami hearing on June 18, 1989. After this hearing the trial court approved the settlement as being in the best interest of the minor. In a subsequent order dated July 24, 1989, the trial court wrote:
"The contract for legal services executed by the mother and legal custodian of the minor Mandy Dill with the firm of Peck & Morrow, providing for an attorney fee of 25% from any recovery from an automobile accident on June 14, 1987, in which the minor sustained grievous injuries, was made without approval of a court of competent jurisdiction or appointment of a guardian ad litem....
"The firm of Peck & Morrow rendered legal professional services for the benefit of the minor separate and apart from services rendered the mother Jacqueline Dill for which they are entitled to be compensated."
The trial court then authorized the court clerk to pay Peck and Morrow $9,200 (approximately 13.4% of the settlement) for "professional services rendered for the benefit of the minor." Peck and Morrow subsequently filed a motion to amend the July 24, 1989, judgment, seeking $17,500, or 25% of the $70,000 settlement. The trial court denied that motion.
Peck and Morrow now appeals, contending that the contingent fee contract was valid and enforceable. Ex parte Peck, 572 So.2d 427 (Ala.1990), is dispositive in this case. There is nothing in the record before us that indicates whether the trial court "heard any evidence of the reasonableness of the attorney fee that would support a consideration of the 12 factors set out in [Peebles v. Miley, 439 So.2d 137 (Ala. 1983)]." Ex parte Peck, supra, at 429. Therefore, we remand this case for proceedings consistent with our opinion in Ex parte Peck, supra.

SUBROGATION
Case 89-87 concerns the validity of the subrogation agreement between Prudential and Jacqueline Dill as it relates to Mandy. Under the Wickes health plan, insureds or their dependents who were injured by third parties were provided for as follows:
"Benefit Modification for Third Party Liability
"If you or one of your covered dependents receive or expect to receive payment (as settlement, judgment, or in any other way) by or on behalf of another person who is considered responsible for a sickness or injury, no benefits will be payable.
"However, if payment by or for the responsible person has not yet been made, and you agree in writing to pay back promptly any benefits paid for that sickness or injury, benefits under the Medical Benefits will be paid or may be deducted from other benefits payable by the plan."
In accord with the above provision, Jacqueline filed Mandy's medical bills with Prudential for payment under the Wickes health plan. Prudential in turn sent Jacqueline a "reimbursement agreement."[1] This agreement read, in part:

*803 "I [Jacqueline Dill] will promptly repay the employee benefit plan if and when I receive payment(s) for the injury or sickness from or on behalf of the responsible person. The repayment will not be more than the payment amount(s) received for the losses and only to the extent of Plan benefits for them."
Jacqueline signed this agreement after consulting with her attorney. Pursuant to this agreement, Prudential paid $43,890 in medical expenses on Mandy's behalf.
Employers Life administered a health plan provided by Danny's employer. Shortly after the accident, Danny obtained custody of Mandy. Since then Mandy has been hospitalized twice as a result of the injuries that she sustained in the accident on June 14, 1987. Employers Life has paid all of the medical expenses for those hospitalizations, in the amount of $16,931.99. Both Prudential and Employers claimed subrogation rights against the $70,000 available as a result of the settlement of Mandy's claim.
The trial court conducted a hearing, at which there was "an extensive examination of the facts to determine whether the settlement was in the best interest of the minor." Maryland Casualty Co. v. Tiffin, 537 So.2d 469, 471 (Ala.1988). After the hearing, the trial court found that as a result of the accident on June 14, 1987, Mandy had "received extensive personal injuries resulting in permanent partial medical impairment." The court further found that the settlement between State Farm and Alfa was in Mandy's best interest and approved the settlement. The trial court held that Prudential's subrogation agreement, as it related to Mandy, was invalid because it had been executed on behalf of a minor without either court approval or the appointment of a guardian ad litem.[2] We reverse and remand.
Prudential appeals, contending that the trial court erred in holding that the subrogation agreement signed by Jacqueline on behalf of Mandy was invalid. In its brief, Prudential argues that the subrogation agreement binds Mandy because her mother signed it on her behalf for necessary medical services.
This Court has long recognized the special nature of contracts involving children and the duty courts have to protect the best interests of the minor. See Maryland Cas. Co., supra; Large v. Hayes, 534 So.2d 1101 (Ala.1988); Abernathy v. Colbert County Hosp. Bd., 388 So.2d 1207 (Ala. 1980); Tennessee Coal, Iron & R.R. Co. v. Hayes, 97 Ala. 201, 12 So. 98 (1892). In this case the record shows that Mandy suffered extensive and life threatening injuries as a result of the collision. Under the Wickes health plan, Prudential was not obligated to pay Mandy's medical expenses unless Jacqueline signed the subrogation agreement. "It is well established in this state that a [parent] has a legal and moral duty to support his minor children" and that "this duty of support includes the obligation to pay for medical necessaries of the children." Ex parte University of South Alabama, 541 So.2d 535, 537 (Ala.1989). See also Waltman v. Waltman, 480 So.2d 594 (Ala.Civ.App.1985); Blue Cross & Blue Shield of Alabama v. Bolding, 465 So.2d 409 (Ala.Civ.App.1984).
In this case the record indicates that Jacqueline had no means other than the Wickes health plan to pay for her daughter's medical care. Consequently, Jacqueline acted reasonably in signing the reimbursement agreement with Prudential. Mandy, however, never signed the reimbursement agreement. Therefore, the fundamental issue in this case is whether the subrogation agreement that Jacqueline signed gives Prudential potential subrogation rights in the proceeds of a settlement between Mandy and the tort-feasor's insurer and the provider of Jacqueline's underinsured motorist coverage. We hold that it does.
Hamrick v. Hospital Service Corp., 110 R.I. 634, 296 A.2d 15 (1972), was factually similar to this case. In Hamrick, the father had medical insurance with Blue Cross *804 for himself and his family. Under the terms of the policy, Blue Cross would pay for any medical expenses of its insured and would be subrogated to any recovery against the tort-feasor. The father's minor child was injured in an automobile accident, and Blue Cross paid more than $3,000 in medical expenses on the child's behalf. The father then sued the tort-feasor on behalf of himself and his child. That action was settled, and a judgment was entered for $8,400. Blue Cross then filed a lien on that portion of the award allocable to the child. In response, the father sought a judgment declaring that Blue Cross's subrogation lien was null and void because it involved a minor.
The Rhode Island Supreme Court held that the minor was bound by the subrogation agreement. The court reasoned that "as a matter of equity and public policy a parent in the discharge of his duty to care for his child can bind that child, even though a minor, to a subrogation clause of a medical service contract." Hamrick, 110 R.I. at 636, 296 A.2d at 17. The Hamrick court recognized that in Rhode Island, as in Alabama, a parent has a duty to provide for the medical care of his or her minor children. The court based its decision on public policy grounds and on equitable considerations.
The availability of medical insurance to minors depends on whether parents contract for insurance to protect their children. If a subrogation clause is a valid provision for such contracts, then the parent should be able to bind the child in order to meet his or her duty of care. The reasoning stated in the Hamrick opinion is equally applicable to the present case:
"If a subrogation clause is a valid and reasonable provision in a medical service contract for adults, there appears to be no compelling reason why it should not be binding on children. Minors are allowed to disaffirm their own contracts because society has a paramount concern to protect a child from his own improvidence even if such protection results in hardship or economic loss to another.... However, enforcement of the subrogation provision does no harm to a minor; it simply prevents him from recovering a windfall.
"... [T]he general rule requires a child who disaffirms a contract to return the consideration received if he can.
"A child who obtained medical treatment under a [medical insurance] contract can not return the services he received, but if he has recovered the value of those services from a tort-feasor, he should be compelled to return that money upon disaffirmance of the contract. Another equitable principle is that a minor cannot take the benefits of a contract while disaffirming the burdens.... Thus, a child should not be allowed to receive the medical benefits of a contract and disaffirm the subrogation clause.
"... [T]o allow a minor who recovers from a tort-feasor for medical expenses paid under a medical insurance contract to keep those proceeds despite a subrogation clause requiring their return to the insurer simply because the parent and not the child entered into the contract, defies equity. The child, though not a subscriber to the contract, is a beneficiary of it and, though perhaps not legally responsible for his own care, is the recipient of the medical services. Therefore, it seems reasonable and fair to bind him in a subrogation clause executed by his parent. Otherwise, he would receive a windfall...."
Hamrick, 110 R.I. at 638-640, 296 A.2d at 17-18. See, Doyle v. Giuliucci, 62 Cal.2d 606, 43 Cal.Rptr. 697, 401 P.2d 1 (1965); Hagerman v. Mutual Hosp. Ins., Inc., 175 Ind.App. 293, 371 N.E.2d 394 (1978); Charles S. Wilson Memorial Hosp. v. Puskar, 26 Misc.2d 281, 208 N.Y.S.2d 229 (N.Y. Sup.Ct.1960); Gardner v. Flowers, 529 S.W.2d 708 (Tenn.1975); see Annotation, Infant's Liability for Medical, Dental, or Hospital Services, 53 A.L.R. 4th 1249 (1987).
We hold that where a minor receives payment for medical services from an insurer, the child is bound by the subrogation clause, or reimbursement agreement, of the contract, even though the parent, rather than the child, signed the agreement.
*805 Therefore, in the present case, Mandy Dill will be bound by the reimbursement agreement with Prudential, if and when Prudential's right to reimbursement arises.
In Powell v. Blue Cross & Blue Shield of Alabama, 581 So.2d 772 (Ala. 1990), we discussed at length when an indemnitor's right to subrogation arises. We held that the right to subrogation does not arise until the indemnitee has been made whole for his loss. Powell, supra, at 778. "For purposes of subrogation, the test for when the insured has been made whole is whether the injured plaintiff has been completely compensated for all of his loss.... The determination of what the plaintiff's loss is, and whether he has been made whole for that loss, is a question of fact." Id. at 778.
In this case the record is insufficient for us to determine what Mandy's loss is and whether she has been made whole for that loss. Therefore, we remand this case for a determination, consistent with Powell, of whether Mandy has been made whole for her loss. If the trial court finds that Mandy has not been fully compensated, then neither Prudential nor Employers has any right to subrogation. If, on the other hand, the trial court finds that Mandy has been fully compensated, then the right of Prudential and Employers to subrogation arises and the court must distribute any proceeds available for subrogation in a manner consistent with our opinion in Powell. Id. at 778-79. The trial court may find the several examples provided in the Powell opinion helpful.
89-86REVERSED AND REMANDED WITH INSTRUCTIONS.
89-87REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and JONES, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., concur in part and dissent in part.
STEAGALL, Justice (concurring in part and dissenting in part).
I concur in the majority's holding that a minor who receives payment for medical services from an insurer is bound by a subrogation clause or reimbursement agreement even though the parent, rather than the minor, signed the agreement. However, I must respectfully dissent from that portion of the opinion that remands case 89-87 for a determination, pursuant to Powell v. Blue Cross & Blue Shield of Alabama, 581 So.2d 772 (Ala.1990), of whether Mandy Dill has been made whole for her loss. See my dissent in Powell.
I concur in the Court's opinion regarding case 89-86.
MADDOX and HOUSTON, JJ., concur.
NOTES
[1] Although this language characterizes the policy as a "reimbursement agreement," the language would nonetheless repay Prudential for the money it paid on behalf of its insured out of money recovered from the tort-feasor. Even though this "reimbursement agreement" would not give Prudential the right to "stand in the shoes" of its insured, in all other respects it serves as a subrogation agreement, and we therefore will apply the same principles that govern conventional subrogation. Powell v. Blue Cross & Blue Shield of Alabama, 581 So.2d 772, 774 n. 3 (Ala.1990).
[2] The trial court also held that Employers was entitled to $10,159.19 in subrogation out of the settlement proceeds paid to Mandy. Neither Employers nor Danny has appealed this portion of the trial court's judgment.