Ples White, Jr., and his wife, Ruby White, sued William G. McConnell, alleging that McConnell had negligently or wantonly injured Mr. White and also, by that injury, had caused Mrs. White to suffer a loss of consortium. They requested a trial by jury. On August 10, 1992, McConnell filed a motion to join Complete Health, Inc., White's health insurance provider, as an involuntary plaintiff. The Tuscaloosa Circuit Court granted the motion by order dated August 11, 1992, and Complete Health was notified at that time. The case was set for trial August 17, 1992, but was continued. The Whites and McConnell then reached a settlement of the Whites' claims in the amount of $500,000. Complete Health paid $74,252.93 of White's health care costs, and claimed a right to be subrogated for this amount from the $500,000 settlement.
On November 12, 1992, the trial court approved the settlement between the Whites and McConnell and ordered the amount of Complete Health's subrogation claim, $74,252.93, retained by the clerk of the court pending further action by the court and a determination of its proper distribution.[1] Also on November 12, 1992, Complete Health entered a formal appearance in this action and adopted the complaint and other pleadings filed by White. On November 18, 1992, the trial court notified all parties of a hearing to be held on December 1, 1992, to determine whether White had been fully compensated by the settlement and, if so, whether Complete Health had a right to subrogation.
At the start of the hearing on December 1, 1992, Complete Health moved for a jury trial. The court denied its motion. All parties were allowed to present evidence to the court relating to Complete Health's subrogation claim. The court entered an order on January 12, 1993, denying Complete Health's motion for a jury trial and holding that, because it found White had not been fully compensated, the subrogation interest asserted by Complete Health had not arisen. Subsequently, Complete Health filed a "Motion for New Trial, Motion to Amend Findings, Motion to Amend Judgment, Motion to Alter Judgment, and Motion to Reconsider." The court heard and denied this motion on April 13, 1993. Complete Health appealed on May 21, 1993. The appeal relates only to Complete *Page 786 
Health's subrogation claim against Ples White, Jr. We affirm.
Complete Health presents six arguments on appeal:
 I. That it was entitled to have a jury determine whether White had been fully compensated.
 II. That the trial court erred in holding that White had not been fully compensated by the settlement he willingly entered into.
 III. That the trial court committed reversible error in applying the burden of proof in the December 1, 1992, hearing.
 IV. That the trial court assumed evidence not in the record and thereby committed reversible error.
 V. That Complete Health is entitled to seek recovery from the defendant tort-feasor if it is determined that White has not been made whole.
 VI. That if Complete Health is entitled to subrogation, the "common fund doctrine" should not apply to reduce Complete Health's recovery.
 I
We first address whether Complete Health was entitled to have a jury determine whether Ples White had been fully compensated. Whether he had been fully compensated is important, because the general rule regarding an insurer's right to subrogation is that "a subrogee is not entitled to recover, absent full recovery by the insured (i.e., unless the damages recovered plus the insurance proceeds exceed the insured's loss)."International Underwriters/Brokers, Inc. v. Liao,548 So.2d 163, 165 (Ala. 1989). The trial court's order denying Complete Health's motion for a jury trial stated two reasons for the denial: that the request was untimely, and that a jury trial was not required for the resolution of the fact issues presented. We agree with both reasons.
Ala.R.Civ.P. 38(b) provides: "Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later that 30 days after the service of the last pleading directed to such issue." Rule 38(d) provides: "The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury." Complete Health was joined as a party, by order of the trial court, on August 11, 1992. Complete Health, by a letter addressed to the Whites, dated August 20, 1992, acknowledged that it was a party to the action; this letter was attached as an exhibit to Complete Health's "memorandum of law" filed in open court December 1, 1992. However, even though Complete Health recognized, at least by August 20, 1992, that it was a party to this action, it did not enter a formal appearance in the action until November 12, 1992, at which time it adopted all the pleadings filed by the Whites, including the Whites' complaint and amended complaint, both of which requested a jury trial. The November 12 appearance, however, came more than 30 days after Complete Health had been joined as a party and much more than 30 days after the last pleading had been filed. Even so, the formal appearance did not specifically request a jury trial and Complete Health did not specifically request a jury trial until the hearing for determining its subrogation rights had been set; the trial court determined that the request had come too late.
Additionally, the only issue that was before the trial court at the December 1, 1992, hearing was whether White had been fully compensated and, thus, whether Complete Health had a subrogation interest. In Alabama, the rule is that an insurer is not entitled to subrogation unless and until the insured has been made whole for his or her loss. Liao, supra, at 166;Powell v. Blue Cross Blue Shield of Alabama, 581 So.2d 772,777 (Ala. 1990); Sharpley v. Sonoco Products Co.,581 So.2d 792, 794 (Ala. 1990); Peck v. Dill, 581 So.2d 800, 805 (Ala. 1990). These cases have established that where the plaintiff has settled his or her claim against the defendant and the issue is whether the plaintiff was fully compensated and, therefore, whether the insurer has a subrogation interest, the trial court is the appropriate factfinder. Powell,581 So.2d 772; Sharpley, 581 So.2d at 794; Peck, 581 So.2d at 805. *Page 787 
Therefore, the trial court properly denied Complete Health's motion for a jury trial.
 II
Complete Health argues that the trial court erred in holding that White had not been fully compensated by the settlement that he willingly entered into. In its brief, Complete Health cites two cases, one from Minnesota and one from West Virginia, supporting its argument that once a party settles its claim it cannot thereafter claim that it was not fully compensated, and that White's damages were therefore set as a matter of law at the amount of the settlement. Illinois Farmers Ins. Co. v.Wright, 391 N.W.2d 519 (Minn. 1986); Bell v. Federal KemperIns. Co., 693 F. Supp. 446 (S.D.W. Va. 1988). However, this Court's own cases implicitly reject this contention. SeePowell, 581 So.2d 772; Sharpley, 581 So.2d 792; Peck,581 So.2d 800. We remanded those three cases for the trial court to determine whether the plaintiff had been fully compensated.Powell, 581 So.2d at 778; Sharpley, 581 So.2d at 794; Peck, 581 So.2d at 805. The record on appeal in each of those three cases was insufficient for us to determine whether the plaintiff had been fully compensated. In each case, the plaintiff had entered a settlement; the fact that we remanded each of those cases for the trial court to determine whether the plaintiff had been fully compensated necessarily suggests that we reject the contention that the settlement sets the amount of full compensation as a matter of law.
The decision in Powell, which was in turn the basis for the decisions in Sharpley and Peck, relied heavily on the case ofRimes v. State Farm Mut. Auto. Ins. Co., 106 Wis.2d 263,316 N.W.2d 348 (1982). The Wisconsin Supreme Court in Rimes
addressed the issue we now consider and reasoned as follows: "A release is merely the giving up of a right or claim, and it may or may not be for full consideration and may or may not make the grantor of the release whole. Moreover, a settlement is defined in Webster's Third New International Dictionary as 'the satisfaction of a claim by agreement often with less than full payment.' " Rimes, 316 N.W.2d at 354. We now specifically hold what our earlier cases have suggested: that a settlement does not necessarily set the amount of a plaintiff's damages for the purpose of determining whether the plaintiff has been fully compensated.
 III
Complete Health's third argument is that the trial court erred in applying the burden of proof in the December 1, 1992, hearing to determine whether White had been fully compensated. The trial judge admitted that in placing the burden of proof on Complete Health he was acting without any guidance from this Court. We, too, can find no Alabama case that has addressed this particular issue. We have, however, found a case from Utah that addresses the specific issue.
Complete Health cites the Bell and Wright cases, supra, as supporting its contention that the burden of proof at the hearing should have been placed on White, the insured. However, we find both cases inapposite, because they held that the amount of the settlement determined, as a matter of law, the extent of the plaintiff's damages. Because of that holding, those cases provide no guidance as to where to place the burden of proof in a hearing that would be unnecessary under that holding.
In allocating an amount received by an insured from a third-party tort-feasor, Utah, like Alabama, does not assume that the amount of the settlement determines the amount of the plaintiff's damages. Hill v. State Farm Mut. Auto. Ins. Co.,765 P.2d 864, 867 (Utah 1988). We hold that the burden is on the insurer to prove that the insured has been fully compensated before the insurer can assert its subrogation rights against the insured; we adopt the rationale of Hill:
 "Where the insured settles with the tort-feasor, the settlement amount goes to the insured unless the insurer can prove that the insured has already received full compensation.
 ". . . [W]here the language of the release leaves the allocation uncertain and where there is no controlling contractual language to the contrary, the insured should *Page 788 
be given the benefit of the doubt as to its damages and the burden will rest with the insurer to prove that the insured has been fully compensated. This procedure has been used by other courts and will result in the most effective implementation of the equitable principles underlying the doctrine of subrogation. See, e.g., Automobile Ins. Co. of Hartford v. Conlon, 153 Conn. 415, 216 A.2d 828 (1966); Dimick ex rel. Dimick v. Lewis 127 N.H. 141, 497 A.2d 1221
(1985)."
Hill v. State Farm Mut. Auto. Ins. Co., 765 P.2d at 868.
Additionally, in Powell we quoted a statement of the Wisconsin Supreme Court in Rimes, 316 N.W.2d at 355 (quotingGarrity v. Rural Mut. Ins. Co., 77 Wis.2d 537, 253 N.W.2d 512,514 (1977)): "Where either the insurer or the insured must to some extent go unpaid, the loss should be borne by the insurer for that is a risk that the insured has paid it to assume." 581 So.2d at 777. We believe that this rationale applies, to some extent, not only to the financial burden, but also to the burden of proof. Therefore, before the insurer recovers from an injured insured any portion of the insured's settlement, the insurer must carry the burden of proving that the insured has been fully compensated.
 IV
Complete Health argues that the trial court considered evidence not in the record and thereby erred. Complete Health argues that the trial judge, in his order determining that White had not been fully compensated, mentioned certain items of White's damages with regard to which there was no evidence presented. Complete Health then goes on to argue that, because the trial judge must have considered those items in finding that White had not been fully compensated, he erred. We reject this argument. The trial judge correctly placed the burden of proof on Complete Health in this matter, and, therefore, it was for Complete Health to show affirmatively that the settlement fully compensated White and that the amounts paid by Complete Health, when added to the amount of the settlement, provided White an amount in excess of that amount required for full compensation for his injuries. Hill v. State Farm Mut. Auto.Ins. Co., 765 P.2d at 868. Any deficiency in the evidence is correctly construed against Complete Health.
Complete Health mentions specific items the trial judge considered. For example, Complete Health asserts that the trial judge recognized that there was no evidence presented regarding White's lost wages. Indeed, if no evidence was adduced in this regard, Complete Health did not carry its burden of showing that the settlement more than compensated White for lost wages. It was appropriate for the court to consider the lack of evidence in this regard. Although Complete Health presented no evidence with regard to White's pre-injury earnings, there was evidence presented regarding White's post-injury earnings. Nonetheless, that evidence was insufficient to support a finding that White had been fully compensated. After a careful review of the trial judge's order and the hearing transcript, we find no error regarding the facts considered by the trial judge.
 V
Complete Health next argues that, if it is determined that White has not been fully compensated for his injuries, then Complete Health is entitled to seek recovery from the defendant tort-feasor. Complete Health argues that we should distinguish between a right of subrogation and a right to reimbursement and that we should apply the principles of Powell, 581 So.2d 772, only to a situation involving reimbursement where the insurer competes with the insured for a limited set of funds.
Complete Health argues that, under traditional subrogation, an insurer is allowed to "stand in the shoes" of the insured in order to recover its payments from the tort-feasor. It argues that the situation where the insurer's right of subrogation does not arise until the insured is fully compensated really presents a reimbursement issue. Under "true subrogation," Complete Health argues, the insurer may proceed against the tort-feasor before the insured is fully compensated because, it says, when it proceeds against the *Page 789 
tort-feasor the insured and the insurer are no longer competing for a limited set of funds.
Complete Health urges this Court to follow Wisconsin and Minnesota in distinguishing between reimbursement and subrogation. Blue Cross Blue Shield United of Wisconsin v.Fireman's Fund Ins. Co. of Wisconsin, 140 Wis.2d 544,411 N.W.2d 133 (1987), overruled by Schulte v. Frazin,176 Wis.2d 622, 500 N.W.2d 305 (1993); Allum v. MedCenter Health Care,Inc., 371 N.W.2d 557 (Minn.App. 1985). However, although the cases in which Wisconsin and Minnesota made that distinction were decided after Rimes, 316 N.W.2d 348, on which Powell was based, they were decided before this Court decided Powell,581 So.2d 772. In Powell we made no such distinction; we simply held: "[T]he insurer is not entitled to subrogation unless and until the insured has been made whole for his loss." 581 So.2d at 777 (emphasis in original). In addition, in Powell, we addressed the procedure typically employed in a subrogation context and noted that it is either the insured or the insurer who brings an action for damages against the tort-feasor. 581 So.2d at 777-78. We did not contemplate that the insured and the insurer could bring separate actions. Therefore, we hold that, because the trial court determined that White had not been fully compensated, Complete Health had no subrogation claim.
 VI
Complete Health contends that if it is entitled to subrogation, the common fund doctrine should not apply to reduce the amount of its recovery. Because we hold that Complete Health is not entitled to subrogation, we need not address this contention.
For the foregoing reasons the judgment entered by the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and KENNEDY, INGRAM and COOK, JJ., concur.
MADDOX, J., concurs in the result.
HOUSTON and STEAGALL, JJ., dissent.
[1] Although not a party to this appeal, Phifer Wire Products, Inc., also had a subrogation claim in the amount of $6,633.90; that amount also was retained by the clerk of the court.