(885 P.2d 1274)
No. 71,594

PHILIP OETINGER, A Minor Child, by and through His Next Friend, John Arnold Oetinger, *Plaintiff/Appellant*, v. AARON POLSON, A Minor Child by and through His Next Friend, Joy Polson; U.S.D. No. 379 BOARD OF EDUCATION, CLAY CENTER, KANSAS; CHARLES MANSFIELD; BRIAN HARRIS; and TYLER NELSON, *Defendants*, v. MAIL HANDLERS BENEFIT PLAN, *Intervenor/Appellee*.

Opinion filed December 9, 1994.

*Robert L. Pottroff*, of Myers, Pottroff & Ball, of Manhattan, for appellant.

*J. Roger Hendrix*, of Hendrix & Wright, of Topeka, for intervenor/appellee.

Before BRAZIL, P.J., RULON and PIERRON, JJ.

RULON, J.: This is a subrogation claim for health benefits paid to a minor child under his father's insurance policy. Philip Oetinger, by and through his father, John Arnold Oetinger, plaintiff, appeals from the district court's order of summary judgment in favor of the Mail Handlers Benefit Plan, intervenor. We affirm.

The facts are essentially undisputed and are as follows:

On October 9, 1991, Philip Oetinger was injured in an automobile collision. Plaintiff filed suit against various defendants, alleging the collision was the result of their negligence.

Philip was covered under the Mail Handlers Benefit Plan (Mail Handlers), his father's health benefit plan. Mail Handlers is a federal employee health benefit plan pursuant to the Federal Employees Health Benefits Program. 5 U.S.C. § 8901 *et seq.* (1988). Plaintiff immediately notified Mail Handlers of the injury and his belief that other parties were responsible. Mail Handlers paid Philip's hospital and medical expenses of $35,430.52.

The subrogation clause of the Mail Handlers contract provided:

"If damages are payable to you or any member of your family as a result of injury or illness for which a claim is made against a third party, the Plan, where cost effective, will take an assignment of the proceeds of the claim and will assert a lien against such proceeds to reimburse the Plan for the full amount of Plan benefits paid or payable to you or any member of your family. The Plan's lien will apply to any and all recoveries for such claim whether by court order or out-of-court settlement. The Plan will provide the necessary forms and may insist on the assignment before paying any benefits on account of the injury or illness. Failure to notify the Plan promptly of a third party claim for damages on which the Plan has paid or may pay benefits may result in an overpayment by the Plan subject to recoupment."

Ultimately, Mail Handlers notified Philip's father of its subrogation interest in the benefits paid and enclosed a subrogation reimbursement agreement for his signature. When Mail Handlers received no response, a follow-up letter was sent, informing plaintiff that benefits would be withheld until the agreement was executed.

On July 28, 1992, Philip and his father signed a subrogation reimbursement agreement. They modified the agreement as follows:

"I (We), Phillip [sic] Ernest Oetinger, hereby agree to prommptly [sic] reimburse Continental Assurance Company ('CNA'), the underwriter of the Mail Handlers Benefit Plan ('MHBP' or 'Plan') for the full amount of any benefits paid by CNA to me (us) or my (our) assignees for ~~covered expenses which I (we) incurred as a result of my~~ any bills hereafter paid for my accident (describe the illness or injury) sustained on or about October 9, 1991 (date), the City of Clay Center, State of Kansas, out of any settlement, judgment or any other recovery which I (we) make for the above described illness or injury, in accordance with the subrogation provision contained in the applicable Mail Handlers Benefit Plan contract statement of benefits or 'brochure' and in consideration of the amounts paid by the Plan or CNA. I (we) agree that the amount to be reimbursed to CNA shall not be subject to reduction, deduction or offset of any sort for any reason unless approved in writing by the Plan. The applicable Plan brochure shall be the brochure in effect at the time the charges were incurred."

Following execution of the subrogation agreement, Mail Handlers paid benefits of $959.38.

On July 16, 1993, the district court approved a settlement of plaintiff's claim against one of the defendants for $80,000. Mail Handlers claimed a lien of $35,430.52 on the settlement proceeds.

Plaintiff claimed Mail Handlers was entitled only to benefits paid since July 28, 1992, the date the subrogation agreement was signed.

Eventually, the district court entered summary judgment in favor of Mail Handlers.

## THE SUBROGATION CLAUSE

Plaintiff argues the subrogation clause is ambiguous regarding when Mail Handlers' subrogation rights may take effect. Plaintiff asserts Mail Handlers' right of subrogation is dependent upon the insured executing a subrogation agreement. Plaintiff argues the only amounts Mail Handlers can claim as subrogation interests are those benefits paid after execution of the subrogation reimbursement agreement.

The district court entered summary judgment for Mail Handlers after finding: (1) the Mail Handlers contract was clear and unambiguous; (2) Mail Handlers was not required to immediately advise plaintiff it would seek subrogation; (3) the subrogation reimbursement agreement is not necessary under the contractual provisions; and (4) the right of subrogation cannot be unilaterally changed by plaintiff in executing the subrogation reimbursement agreement.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. K.S.A. 1993 Supp. 60-256(c). The parties do not assert any genuine issue of material fact exists. Summary judgment was, therefore, proper.

The benefit plan before us is a federally-authorized contract. The parties, however, agree the contract may be interpreted under Kansas law. Additionally, the parties acknowledge K.A.R. 40-1-20, which prohibits insurance companies from issuing health insurance contracts with certain types of subrogation clauses, is preempted by federal law.

The rules of construction for insurance contracts were recently reviewed in *U.S.D. No. 259 v. Sloan*, 19 Kan. App. 2d 445, 452-53, 871 P.2d 861 (1994):

" 'The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court.'

[Citation omitted.] 'Whether an instrument is ambiguous is a matter of law to be decided by the court.' [Citation omitted.] This court's review of questions of law is unlimited. [Citation omitted.]

"The terms of an insurance policy are subject to construction by an appellate court only if the terms at issue can be deemed open to different interpretations. [Citation omitted.] However, courts should not strain to create an ambiguity where in common sense there is none. [Citation omitted.] The policy language must be given its plain, ordinary meaning. [Citation omitted.] 'Policies must be construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary and popular sense.' [Citation omitted.]

"To be ambiguous, a provision must contain language of conflicting or doubtful meaning, as gleaned from a natural and reasonable interpretation of its language. [Citation omitted.] . . .

" 'In construing an insurance policy a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter and the purpose to be accomplished.' [Citation omitted.]"

Plaintiff argues the subrogation clause is ambiguous as to when, if ever, Mail Handlers will begin asserting subrogation rights. Under the subrogation clause, Mail Handlers, where cost effective, *will* take an assignment and *will* assert a lien against proceeds from a claim against a third party. Mail Handlers *will* provide the forms and *may* insist on the assignment before paying any benefits.

Plaintiff's argument is not persuasive. The subrogation clause is not subject to conflicting interpretations as to when Mail Handlers' subrogation rights take effect. Under the clause, Mail Handlers has an absolute right to subrogation. The right is not dependent on the insured's consent, but subject to Mail Handlers' discretion in pursuing its right. In order to protect its interest, Mail Handlers may insist on taking an assignment before paying any benefits.

The district court did not err in finding the contract was clear and unambiguous, did not require plaintiff to execute a subrogation reimbursement agreement, and could not be altered unilaterally by plaintiff.

## ENFORCEABILITY OF THE SUBROGATION CLAUSE

Plaintiff argues that, prior to the time Philip executed the sub-

rogation reimbursement agreement, there was no enforceable contract between Philip and Mail Handlers. Plaintiff argues that, because Philip's father was responsible for Philip's medical expenses, Mail Handlers could "step into the shoes" of Philip's father, and was subrogated to the right of Philip's father to recover the expenses paid. Because Philip's father could not recover from his son, plaintiff asserts Mail Handlers could not do so either and is bound by the subrogation reimbursement agreement between Philip and Mail Handlers.

Kansas courts have not directly addressed this issue. Other jurisdictions have held that where a minor receives payment for medical services from an insurer, the child is bound by the subrogation clause of the insurance contract, even though the parent, rather than the child, signed the contract. *Peck v. Dill*, 581 So. 2d 800, 802-05 (Ala. 1991) (relying on *Hamrick v. Hospital Service Corp.*, 110 R.I. 634, 296 A.2d 15 [1974]).

The reasoning stated in *Peck* is persuasive in this case:

" 'If a subrogation clause is a valid and reasonable provision in a medical service contract for adults, there appears to be no compelling reason why it should not be binding on children. Minors are allowed to disaffirm their own contracts because society has a paramount concern to protect a child from his own improvidence even if such protection results in hardship or economic loss to another. . . . However, enforcement of the subrogation provision does no harm to a minor; it simply prevents him from recovering a windfall.

'. . . [T]he general rule requires a child who disaffirms a contract to return the consideration received if he can.

'A child who obtained medical treatment under a [medical insurance] contract can not return the services he received, but if he has recovered the value of those services from a tort-feasor, he should be compelled to return that money upon disaffirmance of the contract. Another equitable principle is that a minor cannot take the benefits of a contract while disaffirming the burden. . . . Thus, a child should not be allowed to receive the medical benefits of a contract and disaffirm the subrogation clause.

'. . . [T]o allow a minor who recovers from a tort-feasor for medical expenses paid under a medical insurance contract to keep those proceeds despite a subrogation clause requiring their return to the insurer simply because the parent and not the child entered into the contract, defies equity. The child, though not a subscriber to the contract is a beneficiary of it and, though perhaps not legally responsible for his own care, is the recipient of the medical services. Therefore, it seems reasonable and fair to bind him in a subrogation clause executed by

his parent. Otherwise, he would receive a windfall. . . .' " (Emphasis added.) 581 So. 2d at 804 (quoting *Hamrick*, 110 R.I. at 638-40).

See also *Vachon v. Halford*, 484 A.2d 1127, 1128-29 (N.H. 1984) (because parent, not child, is liable for medical expenses incurred on child's behalf, insurer has no subrogation rights against minor, but is subrogated to parents' right to recover medical expenses paid on child's behalf).

*Western Motor Co. v. Koehn*, 12 Kan. App. 2d 215, 218, 738 P.2d 466 (1987), *aff'd* 242 Kan. 402, 748 P.2d 851 (1988), is also instructive. *Western* held that to determine whether an insurer is barred from claiming a right to subrogation from a particular person, the insurance contract must be examined to determine whether it was the intention of the parties to include the person within the scope of the policy's coverage. 12 Kan. App. 2d at 218. Philip was covered under the benefit plan. Therefore, Mail Handlers may pursue its subrogation rights against him.

In light of the above discussion, we need not reach other issues raised.

Affirmed.