(955 P.2d 1333)

No. 78,179

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, *Appellee*, v. DAVID C. HILL and SHELLEY ADAMS, *Defendants*, and AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, *Appellant*.

Opinion filed March 13, 1998.

*Byron L. Sloan*, of Kansas City, Missouri, for appellant.

*Alvin D. Herrington* and *Shari R. L. Willis*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellee.

Before GERNON, P.J., GREEN, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

GREEN, J.: This appeal involves a dispute over the amount of insurance coverage available to Olathe Ford Sales, Inc., (Olathe Ford) under an insurance policy issued to it by Universal Underwriters Insurance Company (Universal Underwriters). American Standard Insurance Company of Wisconsin, Inc., (American Stan-

dard) appeals from a judgment of the trial court declaring that Olathe Ford had only $25,000 in coverage for a car accident. On appeal, American Standard contends that the trial court erred in determining that the policy language in question was unambiguous. In addition, American Standard contends that certain provisions of Universal Underwriters' insurance policy violated the Kansas Automobile Injury Reparations Act. We disagree and affirm.

During the summer of 1993, David C. Hill purchased a new car from Olathe Ford. While awaiting delivery of his new car, Hill received a loaner car from Olathe Ford. The loaner car was owned by Olathe Ford. While driving the loaner car, Hill was involved in a car accident. Shelley Adams was injured in the accident.

In the summer of 1995, Adams filed suit against Hill and Olathe Ford. When the accident occurred, Adams was insured by American Standard and Olathe Ford was insured under an umbrella policy issued by Universal Underwriters. Adams had underinsured limits of $100,000. In the fall of 1995, American Standard intervened in the underlying suit between Adams and Hill.

Hill admitted liability for the injuries and damages sustained by Adams as a result of the collision. The parties stipulated that Adams suffered $300,000 in damages, including $172,972 in noneconomic loss and $89,368 in future economic loss.

Following an entry of judgment in the underlying case, Universal Underwriters moved for declaratory judgment in a separate action. Universal Underwriters asked that the trial court declare Hill's coverage forfeited because Hill breached its policy provisions by confessing to judgment. In the alternative, Universal Underwriters requested that Hill's coverage under its policy be limited to $25,000 should the trial court deny its request for forfeiture.

After dismissing Universal Underwriters' forfeiture claim, the trial court granted summary judgment in favor of Universal Underwriters. The trial court determined that Universal Underwriters' policy was unambiguous and that it only provided coverage limits of $25,000 per person to permissive users such as Hill. The trial court also found that Universal Underwriters' policy provisions did not violate the Kansas Automobile Injury Reparations Act.

The primary issue before the trial court was whether Universal Underwriters' policy contained a limit of $25,000 for permissive users such as Hill or whether the general limits of $300,000 were available. American Standard contends that Universal Underwriters' policy is ambiguous as to the proper limits, and, therefore, the full $300,000 in policy limits is available for the claims against Hill.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995). Here, the facts are essentially undisputed. Whether the trial court erred in granting Universal Underwriters' summary judgment depends upon the construction given the language of the policy.

Moreover, our Supreme Court has frequently observed that " '[a]s a general rule, the construction and effect of a contract of insurance is a matter of law to be determined by the court. If the facts are admitted, then it is for the court to decide whether they come within the terms of the policy.' *Farm Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. 175, Syl. ¶ 1, 660 P.2d 1374 (1983)." *Harris v. Richards*, 254 Kan. 549, 552, 867 P.2d 325 (1994). Moreover, this court recently reviewed the rules of construction for insurance contracts in *Oetinger v. Polson*, 20 Kan. App. 2d 255, 257-58, 885 P.2d 1274 (1994), *rev. denied* 256 Kan. 996 (1995) (quoting *U.S.D. No. 259 v. Sloan*, 19 Kan. App. 2d 445, 452-53, 871 P.2d 861 [1994]):

" ' "The construction of a written instrument is a question of law, and the instrument may be construed and its legal effect determined by an appellate court." [Citation omitted.] "Whether an instrument is ambiguous is a matter of law to be decided by the court." [Citation omitted.] This court's review of questions of law is unlimited. [Citation omitted.]' "

The parties agree that determination of the policy limits for claims against Hill must be made based upon the language in several different sections of the umbrella policy. In the policy declarations, part 500 covers garage operations and auto hazards and has a $300,000 limit. The policy's definitions establish that Adams' claims against Hill fall within the policy's definitions of "auto hazard." That definition reads: " 'AUTO HAZARD' means the own-

ership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody or control and: . . . (3) furnished for the use of any person or organization."

No dispute exists that Hill is an "insured" under the policy for purposes of Adams' claims. The policy states:

"WHO IS AN INSURED— . . .

. . . .

"With respect to the AUTO HAZARD:
  1. YOU;
  2. Any of YOUR partners, paid employees, directors, stockholders, executive officers . . . ;
  3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission."

Thus, as required by Kansas law, Olathe Ford's policy covers permissive users such as Hill. See K.S.A. 40-3107(b).

While the general declarations indicate that policy limits for "auto hazard" under part 500 is $300,000, the policy has what the parties refer to as a "step-down" provision. The step-down provision reduces the policy limits for certain persons covered under the contract—in this case, the policy limits are reduced for permissive users. The policy states:

"THE MOST WE WILL PAY—Regardless of the number of INSUREDS or AUTOS insured by this Coverage Part, persons or organizations who sustain INJURY, claims made or suits brought, the most WE will pay is:

  1. With respect to GARAGE OPERATIONS and AUTO HAZARD, the limit shown on the declarations for any one OCCURRENCE.

  With respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted."

American Standard concedes that these provisions are unambiguous and would limit Universal Underwriters' policy limits for permissive users such as Hill to the minimum allowed by Kansas law—$25,000. A number of other courts reviewing nearly identical language have also held that the terms of this step-down provision

are clear. See *Univ. Underwriters Ins. Group v. Griffin*, 287 Ill. App. 3d 61, 76-77, 677 N.E.2d 1321 (1997) (step-down language in policy unambiguous); *Rader v. Johnson*, 910 S.W.2d 280, 283 (Mo. App. 1995) (noting step-down provisions applicable to customer driving dealership vehicle on test drive); *Rao v. Universal Underwriters, Ins.*, 228 N.J. Super. 396, 402-03, 549 A.2d 1259 (1988) (step-down provision valid under financial responsibility laws); *Bowers v. Estate of Feathers*, 448 Pa. Super. 263, 268-69, 271, 671 A.2d 695 (1995) (step-down provision not an invalid escape clause); *Univ. Underwriters v. Metro. Prop. & Life*, 298 S.C. 404, 407, 380 S.E.2d 858 (1989) (while the language is "stylistically inelegant," its meaning is unmistakable).

Although American Standard concedes that the step-down provision is clear and unambiguous on its own, it argues that the Kansas amendatory addendum to the policy renders the coverage limits ambiguous. That provision states, as to part 500 of the policy:

"The MOST WE WILL PAY Condition in each Coverage Part affording AUTO liability is *changed to include*:

"*OUR limit shown in the declarations applies*, except WE will first provide the separate limits required by Kansas law as follows:

"$25,000 for INJURY to any one person caused by any one OCCURRENCE,

"$50,000 for INJURY to two or more persons caused by any one OCCURRENCE, and

"$10,000 for INJURY to tangible property caused by any one OCCURRENCE.

"This provision will not change OUR limit of liability." (Emphasis added.)

American Standard's arguments regarding the effect of the Kansas amendatory provision are confusing. First, American Standard argues that the Kansas amendatory provision would lead a reasonable person in Hill's place to believe that he was covered under the full $300,000 policy limits. American Standard argues that the provision's reference to " 'our limit shown in the declarations' " means that the full policy limits applies to even permissive users. Because of this reference, American Standard argues that the Kansas amendatory provision would be meaningless if the step-down

provision was still valid. Finally, American Standard attempts to bolster its claim that the provision is ambiguous by arguing that Universal Underwriters made inconsistent arguments before the trial court. According to American Standard, these inconsistent arguments were made because the policy was so unclear.

Universal Underwriters argues that American Standard's reading of the amendatory provision distorts the clear language of the "Most We Will Pay" provision. This provision explains that permissive users will be covered for the minimum insurance coverage required under Kansas law and establishes that the minimum coverage would be paid out of the $300,000 limits first. The provision also explains that any remaining liability of named insureds would then be paid out of the remaining limits of the policy. Universal Underwriters argues that the amendatory provision was added to the policy in order to conform its general policy to Kansas law, which requires policies to "contain stated limits of liability." K.S.A. 40-3107(e). *Cf. Universal Underwriters v. State Farm,* 925 P.2d 1270, 1274 (Utah App. 1996) (full policy limits were held to apply to permissive user because policy's mere reference to state law was insufficient to incorporate statutory minimums into the policy; policy was required to state policy limits).

In determining whether an insurance policy is ambiguous, our courts have stated a court is not at liberty to make another contract for the parties. "When an insurance policy is not ambiguous, the court may not make another contract for the parties. [Citation omitted.]" *Saucedo v. Winger,* 22 Kan. App. 2d 259, 260, 915 P.2d 129 (1996). See also *Metropolitan Life Ins. Co. v. Strnad,* 255 Kan. 657, Syl. ¶ 8, 876 P.2d 1362 (1994) ("Where the language of the contract is clear and can be carried out as written, there is no room for construction or modification of the terms.").

Moreover, our court has stated that a court is required to interpret an insurance policy in the same manner that " ' "a reasonable person in the position of the insured would understand it to mean." ' [Citation omitted.]" *Crescent Oil Co. v. Federated Mut. Ins. Co.,* 20 Kan. App. 2d 428, 433, 888 P.2d 869 (1995). An insurance policy is not ambiguous unless there is a "genuine uncertainty as to which of two or more possible meanings is proper." 20

Kan. App. 2d at 433. The policy must be read as a whole. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 35, 744 P.2d 840 (1987).

Universal Underwriters' policy, like most comprehensive insurance policies, does not make for easy reading, especially when the relevant portions of the policy are taken from a number of different sections of the contract. Although walking through these various provisions is cumbersome and stylistically inelegant, it does not seem that a reasonable person would be misled as to the policy limits for permissive users. Although the amendatory provision references the limits from the declarations page, it clearly sets forth the minimum statutory policy limits under K.S.A. 40-3107(e). If the policy limits did not differ between named insured and permissive users, there would be no need to set forth the statutory minimums. Under American Standard's interpretation, the "Most We Will Pay" provision and the portion of the amendatory language setting forth the statutory minimums would be superfluous and meaningless.

Again, " 'the test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean.' " *Pink Cadillac Bar & Grill, Inc. v. USF & G Co.*, 22 Kan. App. 2d 944, 948, 925 P.2d 452 (1996), *rev. denied* 261 Kan. 1084 (1997). Despite the awkward language of the policy and amendatory provisions, no reasonably prudent insured would read the provisions in the manner suggested by American Standard.

In its second argument on appeal, American Standard argues that even if Universal Underwriters' policy is not ambiguous in limiting liability for permissive users, the step-down provision should be invalidated in its entirety because it is contrary to Kansas law. The provision in question states:

"With respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the *minimum limits provision of such law in the jurisdiction where the OCCURRENCE took place.* When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted." (Emphasis added.)

American Standard contends that this provision violates the Kansas Automobile Injury Reparations Act (KAIRA), K.S.A. 40-3101

*et seq.*, because it incorporates the minimum limits of the "law in the jurisdiction where the OCCURRENCE took place." As pointed out by American Standard, Kansas statutes require policies issued in compliance with the KAIRA to provide coverage for "the ownership, maintenance or use of any such vehicle within the United States of America." K.S.A. 40-3107(b).

American Standard argues that *if* this accident had happened outside the state of Kansas, the policy could provide coverage less than required by K.S.A. 40-3107(e) if the place of occurrence happened to have lower insurance requirements. Because of this language, American Standard contends that the entire provision should be held void. If the entire provision is void, then American Standard contends that the $300,000 policy limit applies to all insureds, including permissive users.

In response, Universal Underwriters makes three arguments. First, Universal Underwriters argues that American Standard's argument is premised on hypothetical facts not existing in this case; thus, Universal Underwriters contends that American Standard's argument should be rejected outright as seeking an advisory opinion. There is no dispute that this accident happened in Kansas and both parties concede that the policy provides the minimum statutory coverage required under Kansas law. Thus, there is no question that the required coverage is available under the facts of *this* case.

In addition, Universal Underwriters contends that the step-down provision complies with the KAIRA because the Kansas amendatory provision specifically provides the limits required by Kansas law. Universal Underwriters argues that these statutory limits are available under the amendatory section, regardless of where the accident occurred. Moreover, the policy has a provision that states that "[i]f any part of this policy is in conflict with local, state or federal law, those provisions in conflict will automatically change to conform to the law." Thus, according to Universal Underwriters, their policy, by its own terms, complies with the KAIRA.

Finally, Universal Underwriters argues that even if the policy differs from the requirements of the KAIRA, the provision is not void. Instead, the KAIRA requires that the insurance policy must

"be construed to obligate the insurer to meet all the *mandatory* requirements and obligations of this act." (Emphasis added.) K.S.A. 40-3107(g). In construing the policy to provide the mandatory requirement of coverage, regardless of where the accident occurred, Universal Underwriters' coverage for Hill is the $25,000 mandated by law. Universal Underwriters concedes it is responsible for this amount.

Both parties rely on *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981). In *DeWitt*, the insured was injured in her own automobile while it was being driven by a mechanic who had just repaired it. The insured's carrier denied coverage, citing a garage shop exclusion barring coverage while used by any person " 'engaged in an automobile business.' " 229 Kan. at 475. The policy also contained a household exclusion which excluded coverage for " 'bodily injury to any insured.' " 229 Kan. at 475. The court held that any provisions which attempted to "dilute, condition or limit statutorily mandated coverage are invalid or void." 229 Kan. at 478. While the court found the exclusions void as contrary to the KAIRA, the court ruled that the provisions were void only as to "the minimum coverage required by statute." 229 Kan. at 480.

Under *DeWitt*, an invalid provision limiting liability is not completely abrogated by the KAIRA. Rather, the provision is only voided to the point necessary to bring the policy in compliance with the minimum coverage required by the Act, that is, $25,000 per person per occurrence. Any exclusions or limits are still effective as to liability above the statutory minimum. Thus, if a policy has excess coverage over the statutory minimum—in this case, the general policy limits of $300,000—an invalid provision does *not* expose the insurance company to the highest policy limits, but invalidates the provision only to the statutory minimum.

Thus, regardless of whether the step-down provision strictly comports with the KAIRA, K.S.A. 40-3107(g) only requires the policy to be construed to provide the minimum statutory coverage. As a result, the trial court did not err in concluding that Universal Underwriters' coverage for the claims against Hill was limited to the statutory minimum of $25,000.

Affirmed.